1  E. MARTIN ESTRADA
   United States Attorney
2  MACK E. JENKINS
   Assistant United States Attorney
3  Chief, Criminal Division
   KERRY L. QUINN (Cal. Bar No. 302954)
4  Assistant United States Attorney
   Major Frauds Section
5       1100 United States Courthouse
        312 North Spring Street
6       Los Angeles, California 90012
        Telephone: (213) 894-5423
7       Facsimile: (213) 894-6269
        E-mail:   Kerry.L.Quinn@usdoj.gov
8
   Attorneys for Plaintiff
9  UNITED STATES OF AMERICA

**F I L E D**
CLERK, U.S. DISTRICT COURT
12/05/2024
CENTRAL DISTRICT OF CALIFORNIA
BY: _____ ASI _____ DEPUTY

10            UNITED STATES DISTRICT COURT

11          FOR THE CENTRAL DISTRICT OF CALIFORNIA

12  UNITED STATES OF AMERICA,        No. CR 2:24-cr-00725-ODW

13          Plaintiff,               PLEA AGREEMENT FOR DEFENDANT
                                     JULIE ANNE DARRAH
14              v.

15  JULIE ANNE DARRAH,

16          Defendant.

17

18      1.   This constitutes the plea agreement between JULIE ANNE

19  DARRAH ("defendant") and the United States Attorney's Office for the

20  Central District of California (the "USAO") in the investigation of

21  defendant for the theft and misappropriation of client funds from

22  defendant's investment advisory business between November 2016 and

23  July 2023 and defendant's misrepresentations in the sale of that

24  business in January 2022.  This agreement is limited to the USAO and

25  cannot bind any other federal, state, local, or foreign prosecuting,

26  enforcement, administrative, or regulatory authorities.

27                    DEFENDANT'S OBLIGATIONS

28      2.   Defendant agrees to:

1          a.    Give up the right to indictment by a grand jury and,

2    at the earliest opportunity requested by the USAO and provided by the

3    Court, appear and plead guilty to a one-count information in the form

4    attached to this agreement as Exhibit A or a substantially similar

5    form, which charges defendant with wire fraud in violation of 18

6    U.S.C. § 1343.

7          b.    Not contest facts agreed to in this agreement.

8          c.    Abide by all agreements regarding sentencing contained

9    in this agreement.

10          d.    Appear for all court appearances, surrender as ordered

11    for service of sentence, obey all conditions of any bond, and obey

12    any other ongoing court order in this matter.

13          e.    Not commit any crime; however, offenses that would be

14    excluded for sentencing purposes under United States Sentencing

15    Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not

16    within the scope of this agreement.

17          f.    Be truthful at all times with the United States

18    Probation and Pretrial Services Office and the Court.

19          g.    Pay the applicable special assessment at or before the

20    time of sentencing unless defendant has demonstrated a lack of

21    ability to pay such assessments.

22          h.    Defendant agrees that any and all criminal debt

23    ordered by the Court will be due in full and immediately.  The

24    government is not precluded from pursuing, in excess of any payment

25    schedule set by the Court, any and all available remedies by which to

26    satisfy defendant's payment of the full financial obligation,

27    including referral to the Treasury Offset Program.

28

2

1          i.   Complete the Financial Disclosure Statement on a form

2  provided by the USAO and, within 30 days of defendant's entry of a

3  guilty plea, deliver the signed and dated statement, along with all

4  of the documents requested therein, to the USAO by either email at

5  usacac.FinLit@usdoj.gov (preferred) or mail to the USAO Financial

6  Litigation Section at 300 North Los Angeles Street, Suite 7516, Los

7  Angeles, CA 90012.  Defendant agrees that defendant's ability to pay

8  criminal debt shall be assessed based on the completed Financial

9  Disclosure Statement and all required supporting documents, as well

10  as other relevant information relating to ability to pay.

11          j.   Authorize the USAO to obtain a credit report upon

12  returning a signed copy of this plea agreement.

13          k.   Consent to the USAO inspecting and copying all of

14  defendant's financial documents and financial information held by the

15  United States Probation and Pretrial Services Office.

16                  FORFEITURE AND FINANCIAL ACCOUNTABILITY

17    3.   Defendant further agrees:

18          a.   To forfeit all right, title, and interest in and to

19  any and all monies, properties, and/or assets of any kind, derived

20  from or acquired as a result of, or used to facilitate the commission

21  of, or involved in the illegal activity to which defendant is

22  pleading guilty (collectively, the "Forfeitable Assets").

23          b.   To the Court's entry of an order of forfeiture at or

24  before sentencing with respect to the Forfeitable Assets and to the

25  forfeiture of the assets.

26          c.   To take whatever steps are necessary to pass to the

27  United States clear title to the Forfeitable Assets, including,

28  without limitation, the execution of a consent decree of forfeiture

and the completing of any other legal documents required for the transfer of title to the United States.

      d.   Not to contest any administrative forfeiture proceedings or civil judicial proceedings commenced against the Forfeitable Assets.  If defendant submitted a claim and/or petition for remission for all or part of the Forfeitable Assets on behalf of himself or any other individual or entity, defendant shall and hereby does withdraw any such claims or petitions, and further agrees to waive any right he may have to seek remission or mitigation of the forfeiture of the Forfeitable Assets.

      e.   Not to assist any other individual in any effort falsely to contest the forfeiture of the Forfeitable Assets.

      f.   Not to claim that reasonable cause to seize the Forfeitable Assets was lacking.

      g.   To prevent the transfer, sale, destruction, or loss of any and all assets described above to the extent defendant has the ability to do so.

      h.   To fill out and deliver to the USAO a completed financial statement listing defendant's assets on a form provided by the USAO.

      i.   That forfeiture of Forfeitable Assets shall not be counted toward satisfaction of any special assessment, fine, restitution, costs, or other penalty the Court may impose.

      j.   With respect to any criminal forfeiture ordered as a result of this plea agreement, defendant waives: (1) the requirements of Federal Rules of Criminal Procedure 32.2 and 43(a) regarding notice of the forfeiture in the charging instrument, announcements of the forfeiture sentencing, and incorporation of the forfeiture in the

1   judgment; (2) all constitutional and statutory challenges to the
2   forfeiture (including by direct appeal, habeas corpus or any other
3   means); and (3) all constitutional, legal, and equitable defenses to
4   the in any proceeding on any grounds including, without limitation,
5   that the forfeiture constitutes an excessive fine or punishment.
6   Defendant acknowledges that forfeiture of the Forfeitable Assets is
7   part of the sentence that may be imposed in this case and waives any
8   failure by the Court to advise defendant of this, pursuant to Federal
9   Rule of Criminal Procedure 11(b)(1)(J), at the time the Court accepts
10  defendant's guilty plea.

THE USAO'S OBLIGATIONS

12      4.   The USAO agrees to:

13          a.   Not contest facts agreed to in this agreement.

14          b.   Abide by all agreements regarding sentencing contained
15  in this agreement.

16          c.   At the time of sentencing, provided that defendant
17  demonstrates an acceptance of responsibility for the offense up to
18  and including the time of sentencing, recommend a two-level reduction
19  in the applicable Sentencing Guidelines offense level, pursuant to
20  U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an
21  additional one-level reduction if available under that section.

22          d.   Except for criminal tax violations (including
23  conspiracy to commit such violations chargeable under 18 U.S.C.
24  § 371), not further criminally prosecute defendant for violations of
25  18 U.S.C. §§ 371, 1341, 1343, 1956, and 1957, and 15 U.S.C. § 78j(b)
26  arising out of defendant's conduct described in the agreed-to factual
27  basis set forth in Exhibit B.  Defendant understands that the USAO is
28  free to criminally prosecute defendant for any other unlawful past

1  conduct or any unlawful conduct that occurs after the date of this
2  agreement.  Defendant agrees that at the time of sentencing the Court
3  may consider the uncharged conduct in determining the applicable
4  Sentencing Guidelines range, the propriety and extent of any
5  departure from that range, and the sentence to be imposed after
6  consideration of the Sentencing Guidelines and all other relevant
7  factors under 18 U.S.C. § 3553(a).

8                              NATURE OF THE OFFENSE
9       5.   Defendant understands that for defendant to be guilty of
10  the crime charged in count one, that is, wire fraud, in violation of
11  Title 18, United States Code, Section 1343, the following must be
12  true:

13      First, the defendant knowingly participated in or devised a
14  scheme or plan to defraud, or a scheme or plan for obtaining money or
15  property by means of false or fraudulent pretenses, representations,
16  or promises;

17      Second, the statements made as part of the scheme were material;
18  that is, they had a natural tendency to influence, or were capable of
19  influencing, a person to part with money or property, and they
20  directly or indirectly deceived the person about the nature of the
21  bargain at issue;

22      Third, the defendant acted with the intent to defraud, that is,
23  the intent to deceive and cheat; and

24      Fourth, the defendant used, or caused to be used, an interstate
25  wire communication to carry out or attempt to carry out an essential
26  part of the scheme.

27

28

1

## PENALTIES AND RESTITUTION

2      6.   Defendant understands that the statutory maximum sentence

3  that the Court can impose for a violation of Title 18, United States

4  Code, Section 1343, is: 20 years' imprisonment; a 3-year period of

5  supervised release; a fine of $250,000 or twice the gross gain or

6  gross loss resulting from the offense, whichever is greatest; and a

7  mandatory special assessment of $100.

8      7.   Defendant understands that defendant will be required to

9  pay full restitution to the victim(s) of the offense to which

10  defendant is pleading guilty.  Defendant agrees that, in return for

11  the USAO's compliance with its obligations under this agreement, the

12  Court may order restitution to persons other than the victim(s) of

13  the offense to which defendant is pleading guilty and in amounts

14  greater than those alleged in the count to which defendant is

15  pleading guilty.  In particular, defendant agrees that the Court may

16  order restitution to any victim of any of the following for any

17  losses suffered by that victim as a result: (a) any relevant conduct,

18  as defined in U.S.S.G. § 1B1.3, in connection with the offense to

19  which defendant is pleading guilty; and (b) any charges not

20  prosecuted pursuant to this agreement as well as all relevant

21  conduct, as defined in U.S.S.G. § 1B1.3, in connection with those

22  charges.  The parties currently believe that the applicable amount of

23  restitution is approximately $7.7 million, but recognize and agree

24  that this amount could change based on facts that come to the

25  attention of the parties prior to sentencing.

26      8.   Defendant understands that supervised release is a period

27  of time following imprisonment during which defendant will be subject

28  to various restrictions and requirements.  Defendant understands that

7

1   if defendant violates one or more of the conditions of any supervised
2   release imposed, defendant may be returned to prison for all or part
3   of the term of supervised release authorized by statute for the
4   offense that resulted in the term of supervised release, which could
5   result in defendant serving a total term of imprisonment greater than
6   the statutory maximum stated above.

7       9.   Defendant understands that, by pleading guilty, defendant
8   may be giving up valuable government benefits and valuable civic
9   rights, such as the right to vote, the right to possess a firearm,
10  the right to hold office, and the right to serve on a jury. Defendant
11  understands that she is pleading guilty to a felony and that it is a
12  federal crime for a convicted felon to possess a firearm or
13  ammunition.  Defendant understands that the conviction in this case
14  may also subject defendant to various other collateral consequences,
15  including but not limited to revocation of probation, parole, or
16  supervised release in another case and suspension or revocation of a
17  professional license.  Defendant understands that unanticipated
18  collateral consequences will not serve as grounds to withdraw
19  defendant's guilty plea.

20      10.  Defendant and her counsel have discussed the fact that, and
21  defendant understands that, if defendant is not a United States
22  citizen, the conviction in this case makes it practically inevitable
23  and a virtual certainty that defendant will be removed or deported
24  from the United States.  Defendant may also be denied United States
25  citizenship and admission to the United States in the future.
26  Defendant understands that while there may be arguments that
27  defendant can raise in immigration proceedings to avoid or delay
28  removal, removal is presumptively mandatory and a virtual certainty

8

in this case.  Defendant further understands that removal and immigration consequences are the subject of a separate proceeding and that no one, including her attorney or the Court, can predict to an absolute certainty the effect of her conviction on her immigration status.  Defendant nevertheless affirms that she wants to plead guilty regardless of any immigration consequences that her plea may entail, even if the consequence is automatic removal from the United States.

FACTUAL BASIS

11.  Defendant admits that defendant is, in fact, guilty of the offense to which defendant is agreeing to plead guilty.  Defendant and the USAO agree to the statement of facts set forth in Exhibit B to this agreement and incorporated herein by reference and agree that this statement of facts is sufficient to support a plea of guilty to the charge described in this agreement and to establish the Sentencing Guidelines factors set forth in paragraph 13 below but is not meant to be a complete recitation of all facts relevant to the underlying criminal conduct or all facts known to either party that relate to that conduct.

SENTENCING FACTORS

12.  Defendant understands that in determining defendant's sentence the Court is required to calculate the applicable Sentencing Guidelines range and to consider that range, possible departures under the Sentencing Guidelines, and the other sentencing factors set forth in 18 U.S.C. § 3553(a).  Defendant understands that the Sentencing Guidelines are advisory only, that defendant cannot have any expectation of receiving a sentence within the calculated Sentencing Guidelines range, and that after considering the

Sentencing Guidelines and the other § 3553(a) factors, the Court will be free to exercise its discretion to impose any sentence it finds appropriate up to the maximum set by statute for the crime of conviction.

13. Defendant and the USAO agree to the following applicable Sentencing Guidelines factors:

| | | |
|---|---|---|
| Base Offense Level: | 7 | [U.S.S.G. § 2B1.1(a)(1)] |
| Specific Offense Characteristics | | |
| Loss greater than $3,500,000 and less than or equal to $9,500,000 | +16 | [U.S.S.G. § 2B1.1(b)(1)(J)] |
| Offense resulted in substantial financial hardship to five or more victims | +4 | [U.S.S.G. § 2B1.1(b)(2)(B)] |
| Sophisticated means | +2 | [U.S.S.G. § 2B1.1(b)(10)(C)] |
| Offense involved violation of securities laws and defendant was an investment adviser | +4 | [U.S.S.G. § 2B1.1(b)(20)(A)] |
| Vulnerable victims | +2 | [U.S.S.G. § 3A1.1(b)(1)] |

Defendant and the USAO reserve the right to argue that additional specific offense characteristics, adjustments, and departures under the Sentencing Guidelines are appropriate. Defendant understands that there is no agreement as to defendant's criminal history or criminal history category.

14. Defendant and the USAO reserve the right to argue for a sentence outside the sentencing range established by the Sentencing Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7).

1                  WAIVER OF CONSTITUTIONAL RIGHTS

2      15.  Defendant understands that by pleading guilty, defendant

3  gives up the following rights:

4           a.   The right to persist in a plea of not guilty.

5           b.   The right to a speedy and public trial by jury.

6           c.   The right to be represented by counsel -- and if

7  necessary have the Court appoint counsel -- at trial.  Defendant

8  understands, however, that, defendant retains the right to be

9  represented by counsel -- and if necessary have the Court appoint

10  counsel -- at every other stage of the proceeding.

11           d.   The right to be presumed innocent and to have the

12  burden of proof placed on the government to prove defendant guilty

13  beyond a reasonable doubt.

14           e.   The right to confront and cross-examine witnesses

15  against defendant.

16           f.   The right to testify and to present evidence in

17  opposition to the charges, including the right to compel the

18  attendance of witnesses to testify.

19           g.   The right not to be compelled to testify, and, if

20  defendant chose not to testify or present evidence, to have that

21  choice not be used against defendant.

22           h.   Any and all rights to pursue any affirmative defenses,

23  Fourth Amendment or Fifth Amendment claims, and other pretrial

24  motions that have been filed or could be filed.

25                  WAIVER OF APPEAL OF CONVICTION

26      16.  Defendant understands that, with the exception of an appeal

27  based on a claim that defendant's guilty plea was involuntary, by

28  pleading guilty defendant is waiving and giving up any right to

1   appeal defendant's conviction on the offense to which defendant is

2   pleading guilty.  Defendant understands that this waiver includes,

3   but is not limited to, arguments that the statute to which defendant

4   is pleading guilty is unconstitutional, and any and all claims that

5   the statement of facts provided herein is insufficient to support

6   defendant's plea of guilty.

7                  LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE

8       17.  Defendant agrees that, provided the Court imposes a total

9   term of imprisonment on all counts of conviction of no more than 151

10  months, defendant gives up the right to appeal all of the following:

11  (a) the procedures and calculations used to determine and impose any

12  portion of the sentence; (b) the term of imprisonment imposed by the

13  Court; (c) the fine imposed by the Court, provided it is within the

14  statutory maximum; (d) to the extent permitted by law, the

15  constitutionality or legality of defendant's sentence, provided it is

16  within the statutory maximum; (e) the amount and terms of any

17  restitution order, provided it requires payment of no more than $7.7

18  million; (f) the term of probation or supervised release imposed by

19  the Court, provided it is within the statutory maximum; and (g) any

20  of the following conditions of probation or supervised release

21  imposed by the Court: the conditions set forth in Second Amended

22  General Order 20-04 of this Court; the drug testing conditions

23  mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); and the alcohol and

24  drug use conditions authorized by 18 U.S.C. § 3563(b)(7).

25      18.  The USAO agrees that, provided (a) all portions of the

26  sentence are at or below the statutory maximum specified above and

27  (b) the Court imposes a term of imprisonment of no less than 121

28  months, the USAO gives up its right to appeal any portion of the

                                   12

sentence, with the exception that the USAO reserves the right to appeal the amount of restitution ordered if that amount is less than $7.7 million.

### WAIVER OF COLLATERAL ATTACK

19.  Defendant also gives up any right to bring a post-conviction collateral attack on the conviction or sentence, including any order of restitution, except a post-conviction collateral attack based on a claim of ineffective assistance of counsel, a claim of newly discovered evidence, or an explicitly retroactive change in the applicable Sentencing Guidelines, sentencing statutes, or statutes of conviction.  Defendant understands that this waiver includes, but is not limited to, arguments that the statute to which defendant is pleading guilty is unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's plea of guilty.  This provision does not affect in any way the right of the USAO to appeal the sentence imposed by the Court.

### RESULT OF WITHDRAWAL OF GUILTY PLEA

20.  Defendant agrees that if, after entering a guilty plea pursuant to this agreement, defendant seeks to withdraw and succeeds in withdrawing defendant's guilty plea on any basis other than a claim and finding that entry into this plea agreement was involuntary, then (a) the USAO will be relieved of all of its obligations under this agreement; and (b) should the USAO choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then (i) any applicable statute of limitations will be tolled between the date of defendant's signing of this agreement and the filing commencing any such action; and

(ii) defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

### RESULT OF VACATUR, REVERSAL OR SET-ASIDE

21.   Defendant agrees that if the count of conviction is vacated, reversed, or set aside, or any of the enhancements imposed by the Court to which the parties stipulated in this agreement is vacated or set aside, both the USAO and defendant will be released from all their obligations under this agreement.

### EFFECTIVE DATE OF AGREEMENT

22.   This agreement is effective upon signature and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney.

### BREACH OF AGREEMENT

23.   Defendant agrees that if defendant, at any time after the effective date of this agreement, knowingly violates or fails to perform any of defendant's obligations under this agreement ("a breach"), the USAO may declare this agreement breached.  All of defendant's obligations are material, a single breach of this agreement is sufficient for the USAO to declare a breach, and defendant shall not be deemed to have cured a breach without the express agreement of the USAO in writing.  If the USAO declares this agreement breached, and the Court finds such a breach to have occurred, then: (a) if defendant has previously entered a guilty plea pursuant to this agreement, defendant will not be able to withdraw

the guilty plea, and (b) the USAO will be relieved of all its obligations under this agreement.

24. Following the Court's finding of a knowing breach of this agreement by defendant, should the USAO choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then:

   a.   Defendant agrees that any applicable statute of limitations is tolled between the date of defendant's signing of this agreement and the filing commencing any such action.

   b.   Defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

   c.   Defendant agrees that: (i) any statements made by defendant, under oath, at the guilty plea hearing (if such a hearing occurred prior to the breach); (ii) the agreed to factual basis statement in this agreement; and (iii) any evidence derived from such statements, shall be admissible against defendant in any such action against defendant, and defendant waives and gives up any claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other federal rule, that the statements or any evidence derived from the statements should be suppressed or are inadmissible.

1          COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES

2                          OFFICE NOT PARTIES

3          25.  Defendant understands that the Court and the United States

4    Probation and Pretrial Services Office are not parties to this

5    agreement and need not accept any of the USAO's sentencing

6    recommendations or the parties' agreements to facts or sentencing

7    factors.

8          26.  Defendant understands that both defendant and the USAO are

9    free to: (a) supplement the facts by supplying relevant information

10   to the United States Probation and Pretrial Services Office and the

11   Court, (b) correct any and all factual misstatements relating to the

12   Court's Sentencing Guidelines calculations and determination of

13   sentence, and (c) argue on appeal and collateral review that the

14   Court's Sentencing Guidelines calculations and the sentence it

15   chooses to impose are not error, although each party agrees to

16   maintain its view that the calculations in paragraph 13 are

17   consistent with the facts of this case.  While this paragraph permits

18   both the USAO and defendant to submit full and complete factual

19   information to the United States Probation and Pretrial Services

20   Office and the Court, even if that factual information may be viewed

21   as inconsistent with the facts agreed to in this agreement, this

22   paragraph does not affect defendant's and the USAO's obligations not

23   to contest the facts agreed to in this agreement.

24         27.  Defendant understands that even if the Court ignores any

25   sentencing recommendation, finds facts or reaches conclusions

26   different from those agreed to, and/or imposes any sentence up to the

27   maximum established by statute, defendant cannot, for that reason,

28   withdraw defendant's guilty plea, and defendant will remain bound to

                                    16

1  fulfill all defendant's obligations under this agreement.  Defendant

2  understands that no one -- not the prosecutor, defendant's attorney,

3  or the Court -- can make a binding prediction or promise regarding

4  the sentence defendant will receive, except that it will be within

5  the statutory maximum.

6                          NO ADDITIONAL AGREEMENTS

7       28.  Defendant understands that, except as set forth herein,

8  there are no promises, understandings, or agreements between the USAO

9  and defendant or defendant's attorney, and that no additional

10 promise, understanding, or agreement may be entered into unless in a

11 writing signed by all parties or on the record in court.

12              PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

13      29.  The parties agree that this agreement will be considered

14 part of the record of defendant's guilty plea hearing as if the

15 entire agreement had been read into the record of the proceeding.

16 AGREED AND ACCEPTED

17 UNITED STATES ATTORNEY'S OFFICE
   FOR THE CENTRAL DISTRICT OF
18 CALIFORNIA

19 E. MARTIN ESTRADA
   United States Attorney

20

21                                           11-25-2024
   _____               _____
   KERRY L. QUINN                            Date
22 Assistant United States Attorney

23                                           11-22-2024
   _____               _____
   JULIE ANNE DARRAH                         Date
24 Defendant

25 Edward Robinson
   _____               11/22/24
   EDWARD ROBINSON, ESQ.                     Date
26 Attorney for Defendant
   JULIE ANNE DARRAH
27

28

                                 17

1                    CERTIFICATION OF DEFENDANT

2        I have read this agreement in its entirety.  I have had enough

3   time to review and consider this agreement, and I have carefully and

4   thoroughly discussed every part of it with my attorney.  I understand

5   the terms of this agreement, and I voluntarily agree to those terms.

6   I have discussed the evidence with my attorney, and my attorney has

7   advised me of my rights, of possible pretrial motions that might be

8   filed, of possible defenses that might be asserted either prior to or

9   at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a),

10  of relevant Sentencing Guidelines provisions, and of the consequences

11  of entering into this agreement.  No promises, inducements, or

12  representations of any kind have been made to me other than those

13  contained in this agreement.  No one has threatened or forced me in

14  any way to enter into this agreement.  I am satisfied with the

15  representation of my attorney in this matter, and I am pleading

16  guilty because I am guilty of the charge and wish to take advantage

17  of the promises set forth in this agreement, and not for any other

18  reason.

19

20  JULIE ANNE DARRAH                    11-22-2024
    Defendant                            Date

21

22                CERTIFICATION OF DEFENDANT'S ATTORNEY

23       I am JULIE ANNE DARRAH's attorney.  I have carefully and

24  thoroughly discussed every part of this agreement with my client.

25  Further, I have fully advised my client of her rights, of possible

26  pretrial motions that might be filed, of possible defenses that might

27  be asserted either prior to or at trial, of the sentencing factors

28  set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines

                                 18

1  provisions, and of the consequences of entering into this agreement.

2  To my knowledge: no promises, inducements, or representations of any

3  kind have been made to my client other than those contained in this

4  agreement; no one has threatened or forced my client in any way to

5  enter into this agreement; my client's decision to enter into this

6  agreement is an informed and voluntary one; and the factual basis set

7  forth in this agreement is sufficient to support my client's entry of

8  a guilty plea pursuant to this agreement.

9  *Edward Robinson*

                                          11/22/24

10  EDWARD ROBINSON, ESQ.                Date
Attorney for Defendant

11  JULIE ANNE DARRAH

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**EXHIBIT A**

1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9              FOR THE CENTRAL DISTRICT OF CALIFORNIA

10  UNITED STATES OF AMERICA,          CR No.

11           Plaintiff,               I N F O R M A T I O N

12            v.                       [18 U.S.C. § 1343: Wire Fraud; 18
                                       U.S.C. § 981(a)(1)(C) and 28
13  JULIE ANNE DARRAH,                 U.S.C. § 2461(c): Criminal
                                       Forfeiture]
14           Defendant.

15

16      The United States Attorney charges:

17                    [18 U.S.C. § 1343]

18  A.   INTRODUCTORY ALLEGATIONS

19      At times relevant to this Information:

20      1.   Defendant JULIE ANNE DARRAH was a resident of Santa Maria,

21  California.

22      2.   Defendant DARRAH ran an investment advisory business called

23  Vivid Financial Management Inc. ("VFM"), and through this business

24  she provided investment advisory services to individual clients.

25      3.   VFM was an SEC-registered investment advisor, and from 2015

26  to 2021, defendant DARRAH was the president, chief compliance officer

27  and one-third shareholder of VFM.

28

4.    Defendant DARRAH was an investment adviser within the meaning of Section 202(a)(11) of the Advisers Act, 15 U.S.C. § 80b-2(a)(11).

5.    Business Victim 1 was an investment advisor firm based in Minnesota.

B.    THE SCHEME TO DEFRAUD

6.    Beginning no later than in or about November 2016, and continuing through at least in or about July 2023, in San Luis Obispo County, within the Central District of California, and elsewhere, defendant DARRAH, together with others known and unknown to the United States Attorney, knowingly and with intent to defraud, devised, participated in, and executed a scheme to defraud investment advisory clients (the "individual victims") and Business Victim 1, as to material matters, and to obtain money and property from such victims by means of material false and fraudulent pretenses, representations, and promises, and concealment of material facts.

7.    The scheme to defraud operated, in substance, as follows:

a.    Defendant DARRAH misappropriated and stole approximately $2.25 million from individual victims, that is clients of her investment advisory business.

b.    Defendant DARRAH gained control of individual victims' assets in several different ways: (1) she was the trustee of their trusts; (2) the individual victims executed standing letters of authorization ("SLOA") authorizing defendant DARRAH, as their investment adviser, to transfer funds from their brokerage accounts to other bank accounts; (3) defendant DARRAH was a signatory on individual victims' bank accounts; and (4) defendant DARRAH had power

of attorney over individual victims' property, including their bank and brokerage accounts.

c.    After gaining control of individual victims' assets, defendant DARRAH, without the knowledge or consent of the individual victims, liquidated securities held in their accounts and then transferred cash from those accounts into her personal bank accounts, where she commingled stolen funds with personal funds and funds relating to her other ventures.

d.    Defendant DARRAH then used those commingled funds to buy and improve properties, pay her personal expenses, buy luxury vehicles, and operate other business ventures.

e.    Defendant DARRAH convinced Business Victim 1 to acquire VFM based on false and misleading statements and the concealment of material facts, including false and misleading statements and concealment of facts regarding her theft of individual victims' funds, which resulted in approximately $5.4 million in losses to Business Victim 1 after the fraud was discovered.

C.    <u>USE OF INTERSTATE WIRES</u>

8.    On or about June 27, 2023, in San Luis Obispo County, within the Central District of California, and elsewhere, defendant DARRAH, for the purpose of executing the scheme to defraud described above, transmitted and caused the transmission of an interstate wire transfer of $90,000, from an account ending -xxx960 at T.D. Ameritrade, held in the name of individual victim C.H., to an account at Mechanics Bank ending -xxx647, held in the name of defendant DARRAH and victim C.H.

1                          FORFEITURE ALLEGATION

2              [18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c)]

3         1.    Pursuant to Rule 32.2 of the Federal Rules of Criminal

4    Procedure, notice is hereby given that the United States of America

5    will seek forfeiture as part of any sentence, pursuant to Title 18,

6    United States Code, Section 981(a)(1)(C) and Title 28, United States

7    Code, Section 2461(c), in the event of defendant JULIE ANNE DARRAH's

8    conviction on the offense set forth in Count One of this Information.

9         2.    Defendant DARRAH, if so convicted, shall forfeit to the

10   United States of America the following:

11             a.    All right, title, and interest in any and all

12   property, real or personal, constituting, or derived from, any

13   proceeds traceable to the offenses; and

14             b.    To the extent such property is not available for

15   forfeiture, a sum of money equal to the total value of the property

16   described in subparagraph (a).

17        3.    Pursuant to Title 21, United States Code, Section 853(p),

18   as incorporated by Title 28, United States Code, Section 2461(c),

19   defendant DARRAH, if so convicted, shall forfeit substitute property,

20   up to the total value of the property described in the preceding

21   paragraph if, as the result of any act or omission of defendant

22   DARRAH, the property described in the preceding paragraph or any

23   portion thereof (a) cannot be located upon the exercise of due

24   diligence; (b) has been transferred, sold to, or deposited with a

25   third party; (c) has been placed beyond the jurisdiction of the

26   court; (d) has been substantially diminished in value; or (e) has

27   //

28   //

1  been commingled with other property that cannot be divided without

2  difficulty.

3

4                                E. MARTIN ESTRADA
                                 United States Attorney
5

6
                                 MACK E. JENKINS
7                                Assistant United States Attorney
                                 Chief, Criminal Division
8
                                 KRISTEN A. WILLIAMS
9                                Assistant United States Attorney
                                 Chief, Major Frauds Section
10
                                 SCOTT PAETTY
11                               Assistant United States Attorney
                                 Deputy Chief, Major Frauds Section
12
                                 KERRY L. QUINN
13                               Assistant United States Attorney
                                 Major Frauds Section
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                 5

**EXHIBIT B**

1  **EXHIBIT B TO PLEA AGREEMENT FOR DEFENDANT JULIE ANNE DARRAH**
2  **STATEMENT OF FACTS SUPPORTING PLEA AGREEMENT**

3  **A.    Introduction**

4      At all relevant times, defendant Julie Anne Darrah ("defendant")
5  was a resident of Santa Maria, California, in the Central District of
6  California, and she ran an investment advisory business called Vivid
7  Financial Management Inc. ("VFM"), and through this business she
8  provided investment advisory services to clients who paid her for
9  these services.  VFM was an SEC-registered investment advisor, and
10  from 2015 to 2021, defendant was the president, chief compliance
11  officer, and one-third shareholder of VFM.  At all relevant times,
12  defendant was an investment adviser within the meaning of Section
13  202(a)(11) of the Advisers Act, 15 U.S.C. § 80b-2(a)(11).

14  **B.    Defendant's Theft of Her Clients' Assets**

15      From November 2016 to July 2023, defendant misappropriated and
16  stole approximately $2.25 million from her clients, nearly all of
17  whom were elderly and at least some of whom were receiving end of
18  life care.  Defendant took advantage of these victims' vulnerable
19  circumstances in stealing money from individuals who were least able
20  to protect themselves or recover from their losses.  Defendant
21  executed the scheme by gaining control of clients' assets,
22  liquidating securities holdings they had, and stealing the proceeds
23  and other money in her clients' accounts for herself and/or the
24  benefit of PC&J Joint Ventures, LLC ("PC&J"), a business she ran in
25  the food service industry, independent of her work as an investment
26  advisor.

27      As detailed below, defendant gained control of defrauded
28  clients' assets in several different ways: (1) she was the trustee of

their trusts; (2) she had defrauded clients execute a standing letter of authorization ("SLOA") authorizing her, as their investment adviser, to transfer funds from their brokerage accounts to other bank accounts; (3) she was a signatory on clients' bank accounts; and/or (4) she had power of attorney over clients' property, including their bank and brokerage accounts.

       1.   Defrauded Client S.S.

On or about October 6, 2015, S.S. hired defendant as an investment advisor to manage S.S.'s personal brokerage accounts and her trust's brokerage accounts. At the time, S.S. was a 75-year-old widow.

As the investment adviser for S.S. and S.S.'s trust, defendant had discretionary authority to buy and sell securities in S.S.'s brokerage accounts. In addition, defendant had S.S. execute an SLOA to authorize defendant to transfer funds from S.S.'s brokerage accounts to S.S.'s bank accounts. Further, in April 2017, S.S. appointed defendant as the trustee of her trust. As its trustee, defendant had the power to manage and invest all of the trust's property, including S.S.'s bank accounts and brokerage accounts. Beginning in October 2017, all of S.S.'s bank account statements were addressed to defendant's home, and starting November 2017, all of S.S.'s brokerage account statements were addressed to another house owned by defendant.

Defendant used her control of S.S.'s accounts and assets to misappropriate $1,057,800 from S.S. To do this, defendant sold nearly all of the securities held in S.S.'s brokerage accounts, without S.S.'s knowledge or consent. Next, defendant used the SLOA to transfer the proceeds from S.S.'s brokerage accounts to S.S.'s

bank accounts. Because defendant also controlled S.S.'s bank accounts, she was then able to take funds out of S.S.'s bank accounts for defendant's own benefit.

In all, defendant transferred $631,975 to herself, $190,000 to PC&J, $200,000 to a third-party to buy a business then held in defendant's own name, $3,500 to another one of defendant's advisory clients, and $2,240 to VFM. In addition, from mid-May 2023 to mid-July 2023, defendant used $30,085 from S.S.'s bank accounts to pay for personal charges defendant had made on S.S.'s credit card.

As of July 31, 2023, S.S.'s bank and brokerage accounts had a total balance of $87,032. Besides her investments, S.S.'s only source of regular income is her social security payment of $1,631 per month. S.S. has been living in a memory care facility since April 2022, where her monthly expenses are $7,845 per month.

### 2. Defrauded Client M.S.

M.S. is the older sister of S.S. In May 2015, M.S., then a 78-year-old widow, hired defendant as her investment adviser to manage her personal accounts and her trust's brokerage accounts.

As M.S.'s investment adviser, defendant had discretionary authority to buy and sell securities in M.S.'s brokerage accounts. In addition, defendant had M.S. execute an SLOA authorizing defendant to transfer funds from M.S.'s brokerage accounts to M.S.'s bank accounts. In 2016, defendant also became a signatory to M.S.'s checking accounts. In 2019, defendant further became a signatory to M.S.'s savings accounts, and in March 2020, defendant became a successor trustee of M.S.'s trust.

Defendant used her control of M.S.'s accounts and assets to misappropriate $578,400 from M.S. To this end, defendant sold nearly

all of the securities held in M.S.'s brokerage accounts, without M.S.'s knowledge or consent.  Next, defendant used the SLOA to transfer the proceeds from the sale of these securities from M.S.'s brokerage accounts to M.S.'s bank accounts.  Because defendant also controlled M.S.'s bank accounts, she was then able to take funds out of M.S.'s bank accounts for defendant's own benefit.  In all, defendant transferred $515,400 to herself, and $63,000 to PC&J.  All of this was done without M.S.'s knowledge or consent.

As of July 31, 2023, M.S.'s bank and brokerage accounts had a total balance of $24,605.  Besides her investments, M.S.'s only source of regular income is her social security payment of $2,027 per month.

### 3.  Defrauded Client C.H.

In March 2022, C.H. hired defendant as her investment adviser. C.H. was an 82-year-old widow at that time.

When she hired defendant as her investment adviser, C.H. also executed a power of attorney that appointed defendant as her agent, and vested in defendant the power to dispose of, sell, and convey C.H.'s real and personal property, including assets held in all of C.H.'s bank and brokerage accounts.  In addition, defendant had C.H. execute an SLOA authorizing defendant to transfer funds from C.H.'s brokerage accounts to C.H.'s bank account.  Then, in late May 2023, defendant became a signatory on C.H.'s bank account.

Defendant used her control of C.H.'s assets to misappropriate $242,000 from C.H.  From late May 2023 to July 20, 2023, defendant sold $210,000 of securities held in C.H.'s brokerage accounts, without C.H.'s knowledge or consent.  She then used the SLOA to transfer $177,800 of those proceeds to C.H.'s bank account, which

defendant also controlled, and she then stole C.H.'s funds for her own benefit.  In all, defendant transferred $236,500 of C.H.'s money to herself, and another $5,500 to another bank account she controlled.  All of this was done without C.H.'s knowledge or consent.

### 4.    Defrauded Clients S.A., C.H.2, and C.L.

In May 2015, S.A., then 72 years old, hired defendant to manage her personal brokerage accounts and her trust's brokerage accounts as her investment adviser.

As S.A.'s investment adviser, defendant had discretionary authority to buy and sell securities in S.A.'s brokerage accounts. In September 2019, S.A. appointed defendant as the trustee of her trust.  As its trustee, defendant had the power to manage and invest all of the trust's property, including S.A.'s bank accounts and brokerage accounts.  S.A.'s daughters, C.H.2 and C.L., were the trust's beneficiaries.  S.A. died in April 2020.

In July 2020, defendant opened a bank account in the name of S.A.'s trust.  Defendant then consolidated S.A.'s assets – including funds from S.A.'s bank and brokerage accounts and from the sale of S.A.'s home – in that bank account.

With all of S.A.'s assets consolidated into that bank account, defendant transferred $7,900 from the account to herself.  Defendant provided no financial reporting concerning the trust to S.A.'s daughters, and they did not know defendant had misappropriated $7,900 of S.A.'s assets for herself.  The net loss to S.A.'s daughters was $5,793, after defendant returned some of the stolen money.

1          5.   <u>Defrauded Client B.C.</u>

2      At the start of 2020, B.C., then a 79-year-old retired teacher,

3 was also one of defendant's advisory clients.  In September 2020,

4 B.C. executed a power of attorney that appointed defendant as her

5 agent, and vested in defendant the power to dispose of, sell, and

6 convey B.C.'s real and personal property, including assets held in

7 all of B.C.'s bank and brokerage accounts.  Defendant then arranged a

8 transfer of $200,000 from B.C.'s accounts to fund a restaurant

9 defendant was opening, without B.C.'s knowledge or consent.

10          6.   <u>Defrauded Client B.H.</u>

11      In November 2021, B.H., then 75 years old, hired defendant as

12 her investment adviser.  A month later, B.H. created a special needs

13 trust for herself and appointed defendant the trustee of that trust.

14 B.H.'s trust provided that defendant, as trustee, was to use trust

15 assets "for the satisfaction of [B.H.'s] special needs," which meant

16 "maintaining [B.H.'s] good health, safety, education and welfare."

17 As its trustee, defendant had the power to manage and invest all of

18 the trust's property, including B.H.'s bank accounts and brokerage

19 accounts.

20      In 2022, after B.H. received an inheritance, defendant opened a

21 bank account in the trust's name, and she deposited $141,618 into

22 that account, representing B.H.'s inheritance.  She told B.H. that

23 she would provide B.H. with money as needed.  However, from February

24 2022 to mid-June 2023, defendant stole a net total of $96,200 in

25 funds from that account.

26      As of mid-June 2023, B.H.'s trust bank account had a balance of

27 $1,012.  The account would have had a negative balance but for

28 defendant's deposit of $3,500 that she took from S.S.

6

7. <u>Defrauded Client D.C.</u>

In August 2020, L.C. became one of defendant's advisory clients. At the time, L.C. was a widowed 85-year-old retired elementary school teacher.  L.C. appointed defendant as trustee of her trust.  As its trustee, defendant had the power to manage and invest all of the trust's property, including L.C.'s bank accounts and brokerage accounts.  In addition, as L.C.'s investment adviser, defendant had discretionary authority to buy and sell securities in L.C.'s brokerage accounts.  In October 2020, L.C. died.  The trust's beneficiary was L.C.'s son, D.C., who also became one of defendant's advisory clients.

Defendant used her control of L.C.'s assets (of which D.C. was the beneficiary) to misappropriate approximately $30,000 from D.C. In November 2020, using her authority as trustee, defendant transferred $20,000 from L.C.'s brokerage account to the trust bank account that defendant had opened and also controlled.  Separately, in October 2021 and February 2022, defendant deposited another $8,170 of L.C.'s money in that account.

8. <u>Defrauded Clients J.S. and P.S.</u>

In March 2019, J.S. was one of defendant's advisory clients. J.S. created a special needs trust for his brother, P.S., and funded the trust with $54,125, his brother's inheritance from their father's estate.

J.S. appointed defendant as trustee for the special needs trust because he wanted a third-party to oversee his brother's use of his inheritance.  As its trustee, defendant had the power to manage and invest all of the trust's property, including its bank accounts.  In July 2020, defendant opened a bank account in the name of the special

needs trust, and deposited $54,125 into that account, representing

P.S.'s inheritance.  Defendant had sole control over that account.

Defendant used her control of the account to misappropriate $39,200

from P.S.

9.    Defendant's Use of Misappropriated Client Funds

In total, between November 2016 and July 2023, defendant

misappropriated approximately $2.25 million in funds from defrauded

clients.

She transferred most of this misappropriated money into her

personal bank accounts, where she commingled stolen client funds with

funds relating to defendant's other business ventures.  She then used

those commingled funds to buy and improve properties, pay her

personal expenses, buy luxury vehicles, and buy and operate food-

related businesses at a loss.

**C.    Business Victim 1**

In January 2022, defendant and VFM's other owners sold VFM's

investment advisory business to another SEC-registered investment

advisor based in Minnesota ("Business Victim 1").  In connection with

that sale, defendant made numerous false and misleading

representations and concealed numerous material facts to induce

Business Victim 1 to purchase the business, failing to disclose,

among other things, her fraudulent misappropriation of client assets.

After the sale, defendant worked for Business Victim 1 as a senior

vice president, continuing to provide investment advisory services to

clients until July 25, 2023, when Business Victim 1 placed defendant

on administrative leave after discovering anomalies that led to

discovery of the fraud.  Business Victim 1 suffered approximately

$5.4 million in losses as a result of the fraud, including money paid

to some of the individual client victims who became clients of
Business Victim 1 when it acquired VFM.

**D.    Interstate Wires**

In executing the fraudulent scheme described above, defendant
caused the transmission of numerous interstate wires, including a
$90,000 interstate wire sent on June 27, 2023, from an account ending
-xxx960 at T.D. Ameritrade, held in the name of victim C.H., to an
account at Mechanics Bank ending -xxx647, held in both defendant's
name and C.H.'s name.

**E.    Losses and Other Sentencing Factors**

Defendant admits and acknowledges the offense to which she is
pleading guilty caused approximately $7.7 million in losses,
including substantial financial harm she personally caused to 5 or
more victims.  Defendant also admits and acknowledges that the
offense involved sophisticated means and she intentionally engaged in
or caused the conduct constituting sophisticated means as set forth
above.  Defendant further admits and acknowledges the offense
involved violations of the securities laws at the time she was acting
as an investment advisor.  Finally, defendant admits and acknowledges
that she defrauded vulnerable victims, and the victims were targeted
in part because of their age and vulnerability.

\*     \*     \*

CERTIFICATION OF DEFENDANT

I have read this STATEMENT OF FACTS IN SUPPORT OF PLEA AGREEMENT
("statement of facts") in its entirety.  I have had enough time to
review and consider this statement of facts, and I have carefully and
thoroughly discussed every part of it with my attorney.  I agree that
this statement of facts is accurate and correct, and is sufficient to

1  support plea of guilty to the charge described in the plea agreement

2  and to establish the Sentencing Guidelines factors set forth in

3  paragraph 13 of the plea agreement.

4

5  _____          11-22-2024
                                            _____
   JULIE ANNE DARRAH                        Date
6  Defendant

7

8

9                 CERTIFICATION OF DEFENDANT'S ATTORNEY

10      I am JULIE ANNE DARRAH's attorney.  I have carefully and

11  thoroughly discussed every part of this statement of facts with my

12  client and agree that it is sufficient to support plea of guilty to

13  the charge described in the plea agreement and to establish the

14  Sentencing Guidelines factors set forth in paragraph 13 of the plea

15  agreement.

16                                           11/22/24
   _____          _____
17  EDWARD ROBINSON, ESQ.                    Date
    Attorney for Defendant
18  JULIE ANNE DARRAH

19

20

21

22

23

24

25

26

27

28

                                  10

**CERTIFICATE OF SERVICE**

I, **T. Montes**, declare:

That I am a citizen of the United States and a resident of or employed in Los Angeles County, California; that my business address is the Office of United States Attorney, 312 North Spring Street, Los Angeles, California 90012; that I am over the age of 18; and that I am not a party to the above-titled action;

That I am employed by the United States Attorney for the Central District of California, who is a member of the Bar of the United States District Court for the Central District of California, at whose direction I served a copy of:

PLEA AGREEMENT FOR DEFENDANT JULIE ANNE DARRAH

☐ Placed in a closed envelope for collection and inter-office delivery, addressed as follows:

☐ Placed in a sealed envelope for collection and mailing via United States mail, addressed as follows:

☐ By hand delivery, addressed as follows:

☒ By email, as follows:
Ed Robinson
Attorney at Law
eroblaw@gmail.com

☐ By messenger, as follows:

☐ By Federal Express, as follows:

This Certificate is executed on December 5, 2024, at Los Angeles, California. I certify under penalty of perjury that the foregoing is true and correct.

/s/
_____
**T. Montes**
Legal Assistant